1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HEATHER BURCHETT and G.B., by
and through his Guardian ad Litem,
HEATHER BURCHETT,

Plaintiffs,

v.

GLOBAL SUPERTANKER SERVICES,
LLC, and DOES 1 through 50,

Defendant.

No.  2:19-CV-01812-MCE-JDP

**MEMORANDUM AND ORDER**

        In this action, Plaintiff Heather Burchett seeks to recover on behalf of herself and her minor child, G.B., (collectively "Plaintiffs") for injuries sustained when her spouse, Matthew Burchett, ("Decedent") was fatally wounded battling a forest fire in Mendocino County.  Defendant Global SuperTanker Services, LLC ("GSTS" or "Defendant") owns and operates a Very Large Airtanker ("VLAT") to assist firefighting operations, often globally.  Presently before the Court is Defendant's Motion to Dismiss the Plaintiffs' First Amended Complaint.  Def's. Mot. Dismiss, ECF No. 39.  Plaintiffs oppose the Motion and move to initiate discovery pursuant to Federal Rule of Civil Procedure 56(d).  Pls.' Opp., ECF No. 44; Pls.' Mot. Disc., ECF No. 47.  For the reasons set forth herein, this Court DENIES Defendant's Motion and DENIES Plaintiffs' Motion as moot.[1]

---

        [1]  Having determined that oral argument would not be of material assistance, this matter was submitted on the briefs in accordance with E.D. Local Rule 2309(g).

1

1

2

**BACKGROUND**[2]

3      Decedent was an experienced Battalion chief and firefighter in Utah and was a

4  leader with the Utah Multi-Agency Taskforce ("Utah Taskforce").  On approximately

5  July 29, 2018, the State of California Department of Forestry and Fire Protection

6  ("CalFire") placed large resource orders out of state to assist with unprecedented fire

7  activity.  The Utah Taskforce, including Decedent, responded to the request and arrived

8  in California on or about August 3, 2018, to assist with the management of the

9  Mendocino Complex Fire in the northern part of the state.  Prior to the Utah Taskforce's

10  arrival, all members of the general public had been evacuated from the area of the fire.

11  Decedent, as the Utah Taskforce leader, attended daily operational briefings and

12  "breakouts" through the CalFire Division C leadership, which addressed daily weather,

13  topography, hazards, and safety concerns, among other considerations relating to their

14  duties.

15      On August 13, 2018, the Utah Taskforce was requested to reinforce a dozer line

16  and place a hose lay to hold a firing operation.  Beginning at 1:00 p.m. that day, aircraft

17  firefighting operations were requested to drop retardant adjacent to the dozer line as a

18  reinforcement to "hold the line."  At all relevant times, Decedent was performing ground

19  force activities "in the black," which refers to a safe drop zone, far from where the active

20  fire was burning.

21      Three Large Airtankers ("LATS") made fire retardant drops approximately three

22  hours after the aforementioned request was made.  Approximately an hour after that,

23  Defendant's VLAT, then operating in "fire suppression activities," dropped 19,600 gallons

24  of fire retardant directly on top of the area where firefighters, including Decedent, were

25  working.  The firefighters were not responding to any rescue or emergency service

26  activity nor had they been requested to assist in any such activity.  The Defendant's

27  VLAT dropped the load of fire retardant from a height of approximately 80 feet, less than

28  _____

[2] The facts in this section are taken from the FAC.  ECF No. 37.

1   half of the required 200-foot altitude.  In doing so, the VLAT prevented the fire retardant

2   from "misting."  Accordingly, instead of harmlessly falling on the Decedent and other

3   firefighters, the load struck the canopy of trees with such extreme force that it uprooted

4   an 87-foot tall Douglas fir tree, which fell upon and fatally wounded Decedent.

5            Plaintiffs subsequently initiated this action in Sacramento County Superior Court,

6   alleging various negligence causes of action against GSTS and CalFire.  GSTS removed

7   the action to here and then sought to dismiss it for failure to state a claim pursuant to

8   Federal Rule of Civil Procedure 12(b)(6).  Similarly, CalFire moved to dismiss the

9   Plaintiff's claims, claiming Government Tort Immunity.  Def.'s CalFire Mot. Dismiss, ECF

10  No. 24.  This Court granted CalFire's motion to dismiss with prejudice, but granted the

11  Plaintiffs an opportunity to amend against Defendant GSTS.  Order, ECF No. 33.

12           Plaintiffs timely amended.  Pls.' Am. Compl., ECF No. 37 ("FAC").  Their FAC sets

13  forth claims for negligence, gross negligence, and strict liability for ultrahazardous

14  activity.  Id.  Defendant has now moved to dismiss the FAC under Federal Rule of Civil

15  Procedure 12(b)(6).  Def.'s Mot. to Dismiss, ECF No. 39.[3]

16

17                                              **STANDARD**

18

19           On a motion to dismiss for failure to state a claim under Federal Rule of Civil

20  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

21  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

22  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

23  statement of the claim showing that the pleader is entitled to relief" in order to "give the

24  defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell

25  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

26  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

27  _____

28           [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
         otherwise noted.

1   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

2   his entitlement to relief requires more than labels and conclusions, and a formulaic

3   recitation of the elements of a cause of action will not do."  Id. (internal citations and

4   quotations omitted).  A court is not required to accept as true a "legal conclusion

5   couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

6   (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

7   to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

8   Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

9   that the pleading must contain something more than "a statement of facts that merely

10  creates a suspicion [of] a legally cognizable right of action.")).

11          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

12  assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

13  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

14  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

15  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

16  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

17  facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

18  have not nudged their claims across the line from conceivable to plausible, their

19  complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

20  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

21  recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

22  232, 236 (1974)).

23

24                                  **ANALYSIS**

25

26          Defendant contends Plaintiffs' claims should be dismissed because they are

27  preempted by federal law, and, regardless, Defendant is protected by either absolute or

28  qualified immunity.  Even if that was not the case, however, Defendant takes the position

4

1    that Plaintiffs also failed to state claims on the merits under Rule 8 for gross negligence

2    or strict liability for ultrahazardous activities.  The Court disagrees.

3         **A.    Preemption**

4         Citing federal law regulating the air industry and interpreting caselaw, Defendant

5    claims that it is immune from liability because compliance with federal law preempts any

6    state law standard of care.  Def.'s Mot. Dismiss, ECF No. 39.  Defendant provides its

7    Standard Airworthiness Certificate as attesting to its compliance with federal law, and

8    requests that the Court take judicial notice of that certificate.  Def.'s Mot. Dismiss Ex. A,

9    ECF No. 39.  The very language of the certificate makes clear, however, that additional

10   factual determinations will be required.  For instance, the "certificate is effective as long

11   as the maintenance, preventative maintenance, and alterations are performed in

12   accordance with Parts 21, 43, and 91 of the Federal Aviation Regulations, as

13   appropriate, and the aircraft is registered in the United States."  Id.  Plaintiffs thus moved

14   for discovery under Rule 56(d) and ask the Court to convert the motion to dismiss into a

15   motion for summary judgment if it intends to consider extrinsic evidence.  Pls.' Mot.

16   Disc., ECF No. 47.  The Court should, Plaintiffs argue, allow time to conduct discovery

17   before ruling on the converted motion.  Id.  While this Court finds the Plaintiffs' argument

18   potentially persuasive, it instead simply declines to consider this additional evidence or

19   to convert the motion prior to the parties engaging in discovery.

20        "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are

21   presented to and not excluded by the court, the motion must be treated as one for

22   summary judgment under Rule 56."  Fed. Rule Civ. Proc. 12(d).  The court, in its

23   discretion, can refuse to consider material outside the pleadings when the adverse party

24   has not had an opportunity to conduct discovery concerning the extrinsic material and

25   summary judgment would be premature at this stage in the litigation.  McGowan v. Cty.

26   of Kern, No. 1:15-cv-01365-DAD-SKO, 2016 WL 2770663, at *3 (E.D. Cal. May 13,

27   2016) (citing Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir.

28   2007)); 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1336.  As indicated,

1  Defendant's contentions will require the Court to make factual determinations on matters

2  outside the pleadings.  Accordingly, since Plaintiffs have not had the opportunity to

3  conduct discovery, this Court will not consider evidence in support of Defendant's

4  preemption argument.  Defendant's Motion to Dismiss on this basis is thus DENIED and

5  Plaintiffs' Motion for Discovery is DENIED as moot.

6        **B.**    **Immunity**

7       Turning to the provisions Defendant cites in support of its immunity arguments,

8  the Court determines that none afford the protection Defendant seeks.  Defendant cites

9  three specific statutes, Cal. Government Code § 850.4, Cal. Public Utility Code § 774,

10  and Cal. Health & Safety Code § 1799.107.  The first two statutes, Gov. Code § 850.4

11  and Public Utility Code § 744, provide absolute immunity from tort liability, while the third,

12  Health & Safety Code § 1799.107, provides liability for only intentional or grossly

13  negligent actions.  Guiding the Court's analysis is the central maxim of interpreting

14  government immunity statutes: Immunity statutes are to be considered narrowly.

15  Milligan v. City of Laguna Beach, 34 Cal. 3d 829, 832 n.2 (1983).

16            **1.**    **Cal. Government Code § 850.4**

17       California Government Code § 850.4 provides public entities and their public

18  employees absolute immunity for "injury resulting from the condition of fire protection or

19  firefighting equipment or facilities."  Thus, in order to qualify for absolute immunity,

20  Defendant must be a public entity or a public employee as those terms are understood

21  by the statute.  The Court is unpersuaded by the Defendant's arguments for extending

22  immunity here.

23       Defendant cites State of California v. Superior Court (Wanda Nagel),

24  87 Cal. App. 4th 1409 (2001) ("Nagel"), to support extending immunity to a private

25  corporation.  Central to their argument is a tortured reading of the case, where

26  Defendant claims the appellate court barred all claims arising out of the act of making an

27  aerial fire-retardant drop.  This argument misses the point. The statute protects public

28  entities for actions or omissions. In Nagel, the protected entity was the state of California

1   and its employees.  Its holding is thus inapposite where, as here, Defendant is a private

2   corporation, working under contract with CalFire.

3          Defendant's argument also runs contrary to California law making clear that "the

4   statutory immunities available to public entities do not extend to private entities that

5   contract with them."  Lichtman v. Siemens Indus. Inc., 16 Cal. App. 5th 914, 930 (2017).

6   The Government Tort Claims Act defines a public employee as "officer, judicial officer. . .

7   employee, or servant, whether or not compensated, but does not include an independent

8   contractor."  Cal. Govt. Code § 810.2.  According to the FAC, Defendant was under

9   contract with CalFire (e.g., as an independent contractor) and cannot be properly

10  classified as a public entity.  Lawson v. Superior Court, 180 Cal. App. 4th 1372 (2010)

11  (private correctional facility is not a public entity as that term is understood for

12  governmental immunity).  The Court is cognizant that Defendant believes Plaintiffs made

13  a judicial admission to the contrary.  That argument is based on very generic language

14  Plaintiffs included in the original complaint indicating that all Defendants—Calfire, the

15  State of California, and GSTS, among others—were agents or employees of one

16  another.  This allegation was entirely conclusory and unsupported by any other facts in

17  the complaint.  Defendant's arguments thus fail, and they are not entitled to absolute

18  immunity.

19                    **2.      Cal Public Utility Code § 774**

20         The next statute on which Defendant relies, California Public Utility Code § 774

21  states, in relevant part, no "water corporation which has undertaken to provide fire

22  protection service, . . . shall be liable for any death or injury to a person . . . resulting

23  from a failure to provide or maintain an adequate water supply or pressure, or any

24  equipment or other fire protection facility or service."  The statute is, at best, ambiguous,

25  but the only California case interpreting Section 774 is nonetheless instructive.  Valley

26  Title Co. v. San Jose Water Co., 57 Cal. App. 4th 1490 (1997) ("Valley").  There, the

27  appellate court analyzed the language and the legislative history of § 774 to determine

28  that the statute extended immunity from damages resulting from a failure to maintain (or

                                                7

keep in good repair) fire protection facilities or equipment.  Id. at 1497-1504.  Defendant

claims it is entitled to immunity because the damages Plaintiffs suffered were a result of

Defendant's failure to maintain fire protection equipment.  Def.'s Mot. Dismiss, ECF

No. 39.  This argument misconstrues Plaintiffs' injury.  As alleged, the Plaintiffs are not

claiming Defendant failed to provide or maintain equipment, but rather Defendant's

affirmative action caused the death of the Decedent.

The central distinction is that the statute protects water corporations from

immunity from nonfeasance, but not misfeasance.  This conclusion is further supported

by the statutory language.  A natural reading of the statute indicates that the phrase

"failure to provide or maintain" extends to both (1) an adequate water supply or pressure,

and (2) any equipment or other fire protection facility or service.  The appellate court in

Valley reached the same conclusion.  Valley, 57 Cal. App. 4th at 1502.  The defendants

there failed to maintain a water main and were accorded absolute immunity under the

statute.  Id.  In an unpublished California opinion, that same defendant—San Jose Water

Company—was granted immunity for failing to keep a lid on an underground fire hydrant.

White v. San Jose Water Co., No. H028770, 2006 WL 2666194 (Ct. App. 2006).  It is

clear from both the statutory language and the few decisions which construe it that the

statute provides immunity from omissions, or nonfeasance, but not actions, or

misfeasance.

As discussed infra, Plaintiffs allege Defendant's negligent or grossly negligent

actions resulted in injury to the Plaintiffs.  Plaintiffs' factual allegations, taken as true for

the purposes of this motion, indicate that Defendant's liability does not run from its

omissions, but rather the affirmative action Defendant took in negligently dropping

19,600 gallons of fire retardant on the Plaintiffs' deceased spouse and father.  This is

drastically different than the facts in either Valley or the unpublished White decision,

where courts extended immunity to protect water corporations from liability from failing to

act.

///

1    Based on the preceding analysis, the Court determines Defendant is not entitled

2    to immunity under Cal Pub. Util. Code § 774.

3    **3.    Cal Health & Safety Code § 1799.107**

4    The Court previously held Defendant was entitled to qualified immunity pursuant

5    to Cal. Health & Safety Code § 1799.107.  As such, Defendant would only be liable for

6    actions taken in "bad faith or in a grossly negligent manner."  Cal. Health & Safety Code

7    § 1799.107(b).  Defendant argues that Plaintiffs' FAC does not allege sufficient facts to

8    support a gross negligent cause of action.  In response, Plaintiffs argue, persuasively,

9    that under the facts pled in the FAC Defendant is not entitled to qualified immunity for

10   any of their claims under Section 1799.107.  Pls.' Opp. ECF No. 44.[4]

11   Section 1799.107 provides "emergency rescue personnel acting within the scope

12   of their employment to provide emergency services," with qualified immunity, "unless the

13   action taken was performed in bad faith or in a grossly negligent manner."  Id.

14   Emergency rescue personnel is defined, in relevant part, as including "any person who is

15   an officer, employee, or member of a fire department . . . or of a private fire

16   department . . . while he or she is actually engaged in providing emergency services as

17   defined by subdivision (e)."  Id.  Defendant is undoubtably a private fire department.  To

18   reap the benefit of the statute, however, Defendant must also have been providing

19   "emergency services" as defined by subdivision (e).

20   "Emergency services includes, but is not limited to, first aid and medical services,

21   rescue procedures and transportation, or other related activities necessary to insure the

22   health or safety of a person in imminent peril."  Id.  Under the facts set forth in the FAC,

23   Defendant was not providing first aid and medical services, nor rescue procedures and

24   transportation; thus, in order to qualify under this provision, they must have been

25   ///

26

27   _____

     [4] When an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint.  Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1043 (9th Cir. 2018).  Thus, the Court is not bound by the law of the case doctrine and is free to reconsider whether Defendant is entitled to qualified immunity under § 1799.107.  See id.

28

1   conducting "other related activities necessary to insure the health or safety of a person in
2   imminent peril."  Id.

3        First, the Court turns to the language of the statute.  The statute contains two
4   "catch-all" phrases: "includes, but is not limited to," and "or other related activities. . . ."
5   Id.  The first phrase generally means the definition of "emergency services" should have
6   a broader range than the enumerated actions.  However, the second phrase is more
7   qualified: "or other related activities necessary to insure the health or safety or a person
8   in imminent peril."  Id.  A natural reading of the statute indicates that the second catch-all
9   term modifies the entire definition.  The activity in question does not have to be limited to
10   "first aid and medical services" or "rescue procedures and transportation," but in order to
11   qualify as "emergency services," it must be "necessary to insure the health or safety of a
12   person in imminent peril."  Id.

13        Defendant argues that it was providing emergency services because it was
14   helping fight the largest fire complex then extant.  Def.'s Mot. Dismiss, ECF No. 39.  The
15   Court accepted Defendant's argument under the facts pled in the original complaint
16   because there was every indication that imminent peril could be inferred under those
17   circumstances.  Plaintiffs' FAC demonstrates however, that there were in fact no
18   individuals in imminent peril, as the area in which the Defendant was operating was both
19   remote and completely evacuated in any event.  FAC, p. 6, ECF No. 37.  Moreover,
20   according to the FAC, the area in which Decedent was operating was far from the front
21   line of the fire, and thus comparatively safer.  Id. at p. 7.  There were accordingly no
22   identifiable persons in "imminent peril" to whom GSTS was providing services
23   "necessary to insure the health and safety."  Id. at pp. 6-7.  If the Court were to accept
24   Defendant's argument with respect to the FAC, it would completely obviate the language
25   of the statute.  Such a reading would not only render certain language surplusage, but it
26   would run directly contrary to its plain language.  Since, at least according to the FAC,
27   Defendant was not providing aid to anyone in "imminent peril," by definition, it cannot
28   have been providing "emergency services" as that term is used in Section 1799.107.

1

### C.   Failure to State a Claim

2

3

4

Upon review, Plaintiffs' FAC includes sufficient facts that we must accept as true "to state a claim to relief that is plausible on its face" as to each of their causes of action. Twombly, 550 U.S. at 570.

5

#### 1.   Gross Negligence

6

7

8

9

10

11

12

"Gross negligence long has been defined in California and other jurisdictions as a want of even scant care or an extreme departure from the ordinary standard of conduct." City of Santa Barbara v. Superior Court, 41 Cal. 4th 747, 754 (2007) (internal quotations omitted) (collecting cases).  "Whether there has been such a lack of care as to constitute gross negligence is generally a triable question of fact."  Haas v. County of El Dorado, No:12-cv-00265 MCE-KJN, 2012 WL 1414115, *13 (E.D. Cal. Apr. 23, 2012) (quoting Colich & Sons v. Pacific Bell, 198 Cal. App. 3d 1225, 1241 (Ct. App. 1988)).

13

14

15

16

The FAC plausibly demonstrates that Defendant failed to provide even scant care and made an extreme departure from the ordinary standard of conduct.  Plaintiffs have pled facts indicating the Defendant had knowledge of the extreme risks of their operation and failed to perform basic safety measures that would prevent harm.

17

18

19

20

21

22

23

24

25

26

27

28

As alleged, Defendant knew dropping fire retardant at a low altitude could result in death or serious bodily injury and that firefighters—under the tree canopy on the ground—were in the close vicinity of the drop zone.  FAC, ECF No. 37.  Furthermore, Defendant admitted they were not familiar with the terrain and landscape of the area.  Id. Despite knowing the risks involved, the Defendant did not conduct a "dry-run" to familiarize itself with the drop area.  Id.  Nor did Defendant attempt to contact and locate the ground forces, even though Defendant knew that ground forces were present and had the capacity to do so.  Id.  Given that Defendant was tasked with "holding the line" and there was no imminent peril, it can also be inferred that there were no exigent circumstances demanding that the drop be performed in less than ideal circumstances. At a minimum, Plaintiffs' allegations demonstrate that Defendant failed to provide even scant care.

11

1    Plaintiffs' complaint also sufficiently alleges Defendant made an extreme

2  departure from the ordinary standard of conduct.  Id.  In addition to the above listed

3  facts, the Plaintiffs allege that the VLAT was not equipped with a radar altimeter.  Id.

4  The FAC alleges that standard industry practice is to utilize radar altimeters because

5  they are more accurate and dependable.  Id.

6    Considering the extreme scope of risks involved, particularly when coupled with

7  Defendant's failure to perform basic safety measures or properly equip the VLAT, the

8  allegations of the FAC taken as a whole plausibly demonstrate an extreme departure

9  from ordinary standard of conduct.  Plaintiffs' FAC thus more than adequately sets forth

10  a plausible claim for gross negligence.  Defendant's Motion to Dismiss Plaintiff's Second

11  Cause of Action is therefore DENIED.[5]

12              **2.    Strict Liability for Ultrahazardous Activity**

13    California courts turn to the factors enumerated in Section 520, Restatement,

14  Second of Torts, to determine whether an activity is "abnormally dangerous or

15  "ultrahazardous."  The factors to be considered are (a) existence of a high degree of risk

16  by the exercise of reasonable care; (b) likelihood that the harm that results from it will be

17  great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to

18  which the activity is not a manner of common usage; (e) inappropriateness of the activity

19  to the place where it is carried on; and (f) extent to which its value to the community is

20  outweighed by its dangerous attributes.  Restatement, Second of Torts, § 520.

21    Defendant argues that it cannot be held strictly liable for an ultrahazardous activity

22  because California courts have held aviation does not so qualify.  Def.'s Mot. Dismiss,

23  ECF No. 41 (citing Boyd v. White, 128 Cal. App. 2d 641, 651 (1954).  However, the

24  cases on which Defendant relies involve plane crashes that result in property damage.

25  See Southern Cal. Edison Co. v. Coleman, 150 Cal. App. 2d Supp. 829, 830 (1957)

26  (summarizing strict liability and airplane case law); but see SKS Farms v. Superior Court,

27  _____

28      [5] Although Defendant only appears to challenge Plaintiffs' standard negligence claim on immunity
grounds, the Court notes that it survives with Plaintiffs' gross negligence claim.

1   153 Cal. App. 3d 902 (1984) (airplane crop dusting could be considered an

2   ultrahazardous activity).  California courts also generally hold that determinations of an

3   "ultrahazardous activity" are ill-suited for motions to dismiss.  See, e.g., SKS Farms,

4   153 Cal. App. 3d at 906 n. 2.

5          Plaintiffs have pled sufficient facts to support a plausible theory of strict liability for

6   an ultrahazardous activity.  The FAC's factual allegations demonstrate the sheer size

7   and magnitude of the VLAT increase the degree of risk and likelihood of harm in

8   conducting a drop of 19,700 gallons of fire retardant.  FAC, p. 13, ECF No. 37.  Indeed,

9   the VLAT is the only such plane in the world that can conduct such massive drops.  Id. at

10  p. 14.  Plaintiffs further allege that the rugged and remote terrain, the close proximity to

11  working ground crews, and the failure to use procedures to protect those ground crews

12  within the drop area made conducting the drop inappropriate.  Id.  In regards to the value

13  to the community and ability to eliminate risk by exercising due care, the FAC contains

14  allegations that the U.S. Forest Service does not approve of the VLAT's use in these

15  instances and the combined fire fighting efforts use other, smaller, air tankers to achieve

16  the same goals with far less risk of injury.  Id. at pp. 13-14.  Taking the Plaintiffs'

17  allegations as true for the instant motion, the FAC contains sufficient factual support to

18  state a plausible theory of strict liability for ultrahazardous activity.  Defendant's Motion to

19  Dismiss Plaintiffs' Third Cause of Action is thus DENIED as well.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2

3        For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 39) is

4    DENIED.  Plaintiffs' Motion for Judgment and Motion for Additional Discovery Under

5    Rule 56(d) is DENIED as moot.

6        IT IS SO ORDERED.

7

8    Dated:  April 23, 2021

9

10                                            MORRISON C. ENGLAND, JR.
                                              SENIOR UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28